**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**THIERRY ROUSSEL and TINA ALEXANDER, individually and on behalf of all others similarly situated** **PLAINTIFFS**

**v.** **Civil No. 1:26cv168-HSO-BWR**

**SINGING RIVER HEALTH SYSTEM** **DEFENDANT**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION [16] TO DISMISS FOR LACK OF JURISDICTION**

Defendant Singing River Health System seeks dismissal of Plaintiffs Thierry Roussel and Tina Alexander's proposed class action data breach case for lack of subject-matter jurisdiction. *See* Mot. [16]; Mem. [17]. Because Plaintiffs lack standing to pursue their claims, the Motion [16] to Dismiss should be granted and the Plaintiffs' claims dismissed without prejudice.

## I. BACKGROUND

### A. Factual Background

Defendant Singing River Health System ("SRHS" or "Defendant") is "a full-service healthcare provider based out of Pascagoula, Mississippi" that "collects, maintains, and stores highly sensitive 'personally identifying information' ('PII'), 'private health information' ('PHI'), and 'financial account information' from its patients (collectively 'Private Information')." Amend. Compl. [3] at 1. The parties agree that SRHS suffered a data breach (the "Data Breach") at the hands of

cybercriminals between December 19 and December 21, 2025, *see* Mem. [17] at 1, who, according to Plaintiffs Thierry Roussel and Tina Alexander ("Plaintiffs"), stole "vast quantities of sensitive Private Information maintained by Defendant," Amend. Compl. [3] at 1.

On May 19, 2026, SRHS made a public announcement about the Data Breach and sent Plaintiffs and other victims letters notifying them of the incident. *See id.* at 5; *id.* at 5 n.5. SRHS's public announcement stated, in relevant part:

> We discovered that an unauthorized party gained access to our computer network and immediately began an investigation with assistance from third-party experts and notified law enforcement. The investigation determined that the unauthorized party accessed SRHS's systems between December 19, 2025 and December 21, 2025. Through this investigation, on February 10, 2026, we learned that the unauthorized party had accessed certain SRHS files that contained patient information. We reviewed the files involved to determine their contents. We identified one or more files that contained some patient information, including names and one or more of the following: contact information, Social Security numbers, driver's license numbers, dates of birth, bank account information, health insurance information, provider names, internal patient identification numbers, dates of service, medication information, and treatment and/or diagnostic information.

*Notice of Data Security Incident*, Singing River Health System (May 19, 2026), available at https://singingriverhealthsystem.com/2026/05/notice-of-data-security-incident/. Plaintiffs contend that SRHS failed to implement reasonable data-security procedures, *see* Amend. Compl. [3] at 5, that public disclosure of the Data Breach was late, *see id.*, that SRHS failed to disclose to the public that its data security was inadequate, *see id.* at 6, and that the delayed disclosure of the breach to the public gave cybercriminals increased opportunity to monetize, misuse, and/or disseminate Plaintiffs' and Class Members' Private Information, *see id.*

B. Procedural History

On June 5, 2026, Plaintiffs filed a Class Action Complaint [1] in this Court against SRHS. *See id.* at 1. The operative Amended Class Action Complaint [3] asserts claims for negligence (Count I), negligence per se (Count II), breach of implied contract (Count III), unjust enrichment (Count IV), breach of fiduciary duty (Count V), and invasion of privacy (Count VI). *See id.* at 31-41. Plaintiffs request "permanent injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts, omissions, and practices described herein." *Id.* at 41. They also seek an award of damages, attorneys' fees, costs, expenses, and pre- and post-judgment interest. *See id.* at 41-42.

According to the Amended Complaint [3]:

> Plaintiff and Class [M]embers [sic] have been exposed to injuries that include, but are not limited to:
>
> a. Theft of Private Information;
>
> b. Costs associated with the detection and prevention of identity theft and unauthorized use of financial accounts as a direct and proximate result of the Private Information stolen during the Data Breach;
>
> c. Damages arising from the inability to use accounts that may have been compromised during the Data Breach;
>
> d. Costs associated with time spent to address and mitigate the actual and future consequences of the Data Breach, such as finding fraudulent charges, cancelling and reissuing payment cards, purchasing credit monitoring and identity theft protection services, placing freezes and alerts on their credit reports, contacting their financial institutions to notify them that their personal information was exposed and to dispute fraudulent charges, imposition of withdrawal and purchase limits on compromised accounts, including but not limited to lost productivity and opportunities, time taken from the enjoyment of one's life, and the inconvenience, nuisance,

and annoyance of dealing with all issues resulting from the Data Breach, if they were fortunate enough to learn of the Data Breach despite Defendant's delay in disseminating notice in accordance with state law;

e. The imminent and impending injury resulting from potential fraud and identity theft posed because their Private Information is exposed for theft and sale on the dark web; and

f. The loss of Plaintiffs' and Class [M]embers' [sic] privacy.

*Id.* at 23-24. With respect to both named Plaintiffs, the Amended Complaint [3] makes word-for-word identical[1] factual allegations in representing their experiences after the data breach. *See id.* at 24-26 (Plaintiff Roussel's factual account); *id.* at 26-28 (Plaintiff Alexander's factual account).

Those allegations include that named Plaintiffs "experienced a dramatic increase in the number of spam calls, emails, text messages, and other communications," *id.* at 25, 27, "suffered actual injury in the form of time spent dealing with the Data Breach and the increased risk of fraud resulting from the Data Breach and/or monitoring [their] accounts for fraud," *id.*, "suffered anxiety due to the public dissemination of [their] personal information, which Plaintiff[s] believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using [their] Private Information for purposes of identity theft and fraud," *id.*, "suffered actual injury in the form of having [their] Private Information stolen as a result of the Data Breach," *id.*, suffered the harm that "[u]pon information and belief, Plaintiff[s']

[1] Paragraphs 84-93 describing Plaintiff Roussel's experience and paragraphs 94-103 describing Plaintiff Alexander's experience are identical such that there are no dissimilarities in their accounting of harms caused by the Data Breach.

Private Information is now publicly available on the dark web because that is the *modus operandi* of cybercriminals who perpetrate data breaches of this nature," *id.* at 26, 28, "suffered actual injury from having [their] Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of [their] Private Information, a form of property that Defendant obtained from [them]; (b) violation of Plaintiff[s'] privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud," *id.*, "[a]s a result of the Data Breach, Plaintiff[s] anticipate spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach[,] [a]nd . . . are at a present risk and will continue to be at increased risk of identity theft and fraud for years to come," *id.*, and have a "continuing interest in ensuring that [their] Private Information is safeguarded from future breaches" because "Defendant's systems have already been shown to be highly susceptible to compromise and are subject to further attacks so long as Defendant fails to undertake the necessary and appropriate security and training measures to protect Private Information," *id.* Across all of these general allegations, the named Plaintiffs do not identify a specific instance of misuse of their particular Private Information.

Plaintiffs claim that they "made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud" and that they have "also spent several

hours dealing with the Data Breach, valuable time Plaintiff[s] otherwise would have spent on other activities, including, but not limited to, work and recreation." *Id*. at 25, 27.

In its Motion [16] to Dismiss, Defendant argues that Plaintiffs "lack Article III standing," and that the Complaint "does not state plausible claims under Mississippi law." Mot. [16] at 1. "[W]hile Plaintiffs have alleged facts demonstrating a data breach and the **possibility** that someone might suffer the injuries they allege, they have provided no factual allegations demonstrating the reality of any threat of impending injury to them." Mem. [17] at 7 (emphasis in original). According to Defendant, "[t]he gist of Plaintiffs' allegations is that they suffered a subjective apprehension about what *might* happen in the future, and inconvenience related to their unilateral efforts to satisfy those subjective concerns," but the Amended Complaint [3] does not adequately demonstrate the actuality of any threat of impending injury. *Id.* (emphasis in original).

Plaintiffs respond that they have alleged a concrete injury sufficient to confer Article III standing, citing "immediate" risk of identity theft, emotional injuries, efforts to mitigate harm, and loss of privacy. *See* Resp. [19] at 5-14. With respect to traceability, Plaintiffs maintain that Defendant's argument is akin to proximate causation, which is not required for Article III standing, and that their allegations suffice. *See id.* at 14-15. Finally, Plaintiffs assert that they have adequately stated claims under Mississippi law. *See id.* at 17-32.

## II. DISCUSSION

### A. Applicable Legal Standards

#### 1. Federal Rule of Civil Procedure 12(b)(1)

Defendant has moved to dismiss under both Rule 12(b)(1) and 12(b)(6). *See* Mot. [16]. "When a Rule 12(b)(1) motion is filed with other Rule 12 motions, the court should consider the Rule 12(b)(1) motion 'before addressing any attack on the merits.'" *D&G Holdings, L.L.C. v. Becerra*, 22 F.4th 470, 474 (5th Cir. 2022) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). When considering such a motion, a court must "accept the complaint's well-pleaded factual allegations as true," *Carver v. Atwood*, 18 F.4th 494, 496 (5th Cir. 2021), and dismissal is appropriate "when the plaintiff does not 'plausibly allege all jurisdictional allegations,'" *Ghedi v. Mayorkas*, 16 F.4th 456, 463 (5th Cir. 2021) (quoting *Brownback v. King*, 592 U.S. 209, 217 (2021)). "In other words, the same plausibility standard that applies in the Rule 12(b)(6) context also applies to Rule 12(b)(1)." *Id.* In evaluating a Rule 12(b)(1) motion, "a court may consider (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, Ltd. Liab. Corp.*, 757 F.3d 481, 483 (5th Cir. 2014) (quotation omitted). "For a 12(b)(1) motion, the general burden is on the party asserting jurisdiction." *Dickson*

*v. United States*, 11 F.4th 308, 312 (5th Cir. 2021) (citing *Castro v. United States*, 608 F.3d 266, 268 (5th Cir. 2010) (en banc)).

2. Standing Generally

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Murthy v. Missouri*, 603 U.S. 43, 56 (2024) (quoting U.S. Const. art. III, § 2, cl. 1). "A proper case or controversy exists only when at least one plaintiff establishes . . . standing to sue." *Id.* (quotation and alterations omitted). To satisfy Article III standing requirements, a plaintiff must demonstrate they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Id.* (quotation and alterations omitted).

To demonstrate an injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Id.* (quotations omitted). And for an injury to be "concrete" it must be "'*de facto*'; that is, it must actually exist," meaning it must be "real" and not "abstract." *Id.*

(quotations omitted). Although tangible injuries are easier to recognize, the Supreme Court has recognized that "intangible injuries can nevertheless be concrete." *Id.* To determine whether an intangible harm constitutes an injury in fact, courts should "consider whether an alleged intangible harm has a close relationship to a harm that has been traditionally regarded as providing a basis for a lawsuit in English or American courts." *Id.* at 341.

The requirement that an injury be "actual or imminent," *id.* at 339, means that the injury must have already occurred, be "certainly impending," or be at "a substantial risk" of occurring, *Dep't of Com. v. New York*, 588 U.S. 752, 767 (2019) (quotations omitted). Thus, "allegations of *possible* future injury" or theories of injury that rest "on a highly attenuated chain of possibilities" are not sufficient. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409-410 (2013) (emphasis in original) (quotation omitted); *see also Book People, Inc. v. Wong*, 91 F.4th 318, 329 (5th Cir. 2024) ("Injuries . . . that require guesswork as to how independent decisionmakers will exercise their judgment will not suffice." (quotations omitted)). And in the case of a suit for damages, "the mere risk of future harm, standing alone, cannot qualify as a concrete harm" unless "the exposure to the risk of future harm itself causes a *separate* concrete harm." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 (2021) (emphasis in original).

For traceability, a plaintiff "must allege 'a causal connection between the injury and the conduct complained of.'" *Book People*, 91 F.4th at 332 (quoting *Lujan*, 504 U.S. at 560). "Tracing an injury is not the same as seeking its proximate

cause." *Id.* (quotation omitted). When the causal connection between the injury and the challenged action "depends upon the decision of an independent third party . . . standing is not precluded, but it is ordinarily substantially more difficult to establish." *Id.* (alterations in original) (quoting *California v. Texas*, 593 U.S. 659, 675 (2021)). In such a circumstance, the plaintiff "must show at the least that third parties will likely react in predictable ways." *Id.* (quotation omitted). "A plaintiff cannot establish that an injury is 'fairly traceable' by proposing a 'speculative chain of possibilities.'" *Williams v. Bienville Orthopaedic Specialists*, 737 F. Supp. 3d 411, 422 (S.D. Miss. 2024) (quoting *Clapper*, 568 U.S. at 414).

To prove redressability, a plaintiff "must show that a favorable decision will relieve a discrete injury" to himself. *Book People*, 91 F.4th at 332 (quotation omitted). It must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)).

3. Standing in Data Breach Cases

The Fifth Circuit has previously addressed the question of standing in the context of a data breach. *See Ellis v. Cargill Meat Sols.*, No. 24-10339, 2024 WL 4692024, at *3 (5th Cir. Nov. 6, 2024) (per curiam), *cert. denied*, 145 S. Ct. 2801 (2025). There it held that the plaintiff had failed to carry his burden because he only alleged that the "cyberattack placed him at continued risk of exposure to hackers and thieves of his personally identifying information and subjected him to

potential fraud and identity theft," but did not allege that risk had materialized. *Id.* (quotations omitted).

A number of other courts have also had occasion to assess Article III standing in data breach cases, *see Williams*, 737 F. Supp. 3d at 417-20 (surveying Supreme Court and out-of-circuit precedent applicable to data breach cases), and courts within the Fifth Circuit have arrived at varying conclusions, *see, e.g.*, *Okelola v. Duff Capital Investors, LLC*, No. 2:26-cv-00002-HSO-BWR, Dkt. [19] at 16, 22 (S.D. Miss. July 10, 2026) (holding that data-breach plaintiff did not suffer an injury in fact because he failed to plead "adequate facts to plausibly claim any actual misuse of his PII," nor were claimed injuries traceable because plaintiff failed to allege facts linking harms to the data breach); *Williams*, 737 F. Supp. 3d at 424-425 (holding that certain plaintiffs suffered an injury in fact but dismissing the complaint without prejudice because "[t]he mere fact that [plaintiffs] experienced misuse of their PII or learned that some of their PII had been stolen after the data breach is insufficient to show that the misuse of their PII is fairly traceable to the . . . data breach"); *Hemphill v. Horne*, Civ. No. 3:24-cv-74, 2025 WL 837007, at *1 (S.D. Miss. Mar. 10, 2025) ("Of Hemphill and Chizek, only Chizek has plausibly pled injuries in fact based on the exposure of his private PII. All the same, the traceability requirement dooms his claims. That his private PII was exposed says nothing about whether it was exposed *in the breach*." (emphasis in original)); *Logan v. Marker Grp., Inc.*, Civ. No. 4:22-cv-174, 2024 WL 3489208, at *1 (S.D. Tex. Jul. 18, 2024) (finding no standing where plaintiffs had failed to allege they were victims of

actual identity theft, and holding that "even if Logan and Baxter's alleged occurrences could constitute a sufficient injury-in-fact, they would still 'fail to meet the causation and redressability elements of the standing test.'" (quoting *Peters v. St. Joseph Servs. Corp.*, 74 F. Supp. 3d 847, 857 (S.D. Tex. 2015)); *In re New Era Enters. Inc. Data Incident Litig.*, No. CV H-25-732, 2026 WL 303547, at *3-*4 (S.D. Tex. Feb. 4, 2026) (adopting and applying a Second Circuit standing test for data-breach cases that permits standing absent a specific allegation of misuse of a plaintiff's personal information, and finding standing under that test (citing *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 301-02 (2d Cir. 2021))); *Cabezas v. Mr. Cooper Grp., Inc.*, Civ. No. 3:23-cv-2453, 2025 WL 2053787, at *1 (N.D. Tex. Jul. 22, 2025) (finding standing because plaintiffs alleged injury in fact and because the traceability burden is "relatively modest at the pleading stage of the litigation" (quotation omitted)); *Merrell v. 1st Lake Props., Inc.*, No. CV 23-1450, 2023 WL 6316257, at *4 (E.D. La. Sept. 28, 2023) (finding injury in fact and explaining that "Plaintiff has alleged that he does not recall receiving any other notices of data breach, and that his PII was compromised because defendant failed to implement minimum safeguards in contravention of its legal obligation to do so. At this stage, nothing further is required to establish traceability for constitutional purposes." (footnotes omitted)). Nevertheless, the foregoing authority reflects that certain trends have emerged which the Court finds persuasive.

First, as a general rule, courts have found that an increase in spam communications, such as calls, texts, and emails following a data breach does not

constitute an injury in fact. *See Cabezas*, 2025 WL 2053287, at *5; *Williams*, 737 F. Supp. 3d at 421 ("Fendley's allegation of an increase in spam phone calls is insufficient to establish an injury in fact."); *Perklaki v. J.B. Poindexter & Co., Inc.*, Civ. No. 4:24-cv-01649, 2025 WL 754503, at *4 (S.D. Tex. Mar. 10, 2025) (Report and Recommendation) (recognizing that spam communications have "become very common in this digitized world" and that "spam is not a concrete harm" (quotation omitted)); *Hulse v. Acadian Ambulance Serv. Inc.*, Civ. No. 6:24-cv-01011, 2025 WL 1453847, at *8 (W.D. La. May 19, 2025) (Report and Recommendation) (explaining that "the Fifth Circuit would also likely consider an increase in spam email and text as a time-based injury insufficient to constitute a concrete injury"); *McCombs v. Delta Grp. Elecs., Inc.*, 676 F. Supp. 3d 1064, 1074 (D.N.M. 2023) ("Spam calls, texts, and e-mails have become very common in the digitized world, and a number of courts have declined to confer standing when considering an increase in spam communications."); *see also Hemphill*, 2025 WL 837007, at *8 ("Without more, Chizek seems to simply be one among the many of us who are interrupted in our daily lives by unsolicited calls. This is not enough to infer that the [data] breach caused the spam communications." (quotation and internal citation omitted)); *In re ESO Sols., Inc. Breach Litig.*, Civ. No. 1:23-cv-1557, 2024 WL 4456703, at *5 (W.D. Tex. Jul. 30, 2024) ("Without specific facts linking the spam to ESO's data breach, the increase in spam is not traceable to ESO."); *but see In re New Era Enters.*, 2026 WL 303547, at *6 (holding that factual allegations that plaintiffs' contact information was stolen and the details of the content or frequency of the spam

communications could constitute enough facts to show standing to assert injuries based on the increased spam calls and messages after the data breach if plaintiffs adequately allege that their injuries are traceable to the data breach).

Next, courts in this Circuit have generally viewed with disfavor theories of standing based upon diminution in value of PII or "loss of the benefit of the bargain." *See, e.g.*, *In re ESO Sols., Inc. Breach Litig.*, 2024 WL 4456703, at *6-*7 ("[D]istrict courts in Texas have been more skeptical [of diminution of PII claims], with at least three dismissing similar 'loss-of-value' claims . . . . Even if diminished PII was cognizable in the Fifth Circuit, Plaintiffs do not plausibly show their PII has diminished in value. Plaintiffs fail to allege that they attempted to or would have ever sold their PII. Nor do they allege that if they now attempted to sell their PII, they would be forced to accept a diminished price for it." (internal citations omitted)); *Cabezas*, 2025 WL 2053287, at *6 ("Even if the Court found diminution of value a concrete harm, because Plaintiffs fail to allege that they intended or attempted to sell their data and were forced to do so at a diminished price, the Court finds that they have not plausibly pled diminution of value."); *Williams*, 737 F. Supp. 3d at 422 ("Finally, the named plaintiffs' claims of injury-in-fact based on lack of benefit-of-the-bargain and diminished value of private information are not well-taken. There is no allegation that any of the plaintiffs paid a certain amount of money to Bienville in exchange for protection of their private information or that they intend to sell their private information." (internal citations omitted)); *Hemphill,* 2025 WL 837007, at *7 ("Hemphill and Chizek's speculation that their

PII's value has diminished because it might have been stolen in the breach is not sufficiently concrete to satisfy the injury in fact requirement." (quotation omitted)).

Finally, courts have reached varying conclusions about whether mere exposure of PII to unauthorized actors, without actual misuse, constitutes a concrete injury. The Second Circuit has held that mere exposure of PII is an injury. *See Bohnak v. Marsh & McClennan Cos.*, 79 F.4th 276, 285-86 (2d Cir. 2023) ("The core of the injury Bohnak alleges here is that she has been harmed by the exposure of her private information—including her SSN and other PII—to an unauthorized malevolent actor. This falls squarely within the scope of an intangible harm the Supreme Court has recognized as 'concrete.'" (citing *TransUnion*, 594 U.S. at 424)). But the Eleventh and Fourth Circuits still appear to require some form of misuse before recognizing an injury in fact has occurred. *See, e.g., Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 428 (4th Cir. 2025) ("The risk that their driver's license numbers may be misused in the future fails to furnish standing because they have not alleged facts showing that any particular misuse is imminent. The risk that another data breach may befall Elephant in the future fails for the same reason. And the lack of imminent injury prevents the plaintiffs from bootstrapping their way into standing for damages solely by expending time or alleging emotional distress."); *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 889 (11th Cir. 2023) ("We typically require misuse of the data cybercriminals acquire from a data breach because such misuse constitutes both a 'present' injury and a 'substantial risk' of harm in the future." (quoting *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d

1332, 1343-44 (11th Cir. 2021))); *O'Leary v. TrustedID, Inc.*, 60 F.4th 240, 244 (4th Cir. 2023) ("[W]e've held that being subjected to a data breach isn't in and of itself sufficient to establish Article III standing without a nonspeculative, increased risk of identity theft.").

But the Court is aware that some courts—including some in this Circuit—have held that publication of PII on the "dark web" constitutes an injury-in-fact. *See, e.g.*, *Holmes*, 156 F.4th at 425-26 (holding that two plaintiffs who found their driver's license numbers on the dark web, "an anonymous online network for unregulated content and markets," and attributed the numbers being there to the data breach, alleged sufficient facts showing a concrete injury under Article III); *Green-Cooper*, 73 F.4th at 889 (holding plaintiffs' allegations that personal information was exposed for theft and sale on the dark web was sufficient to establish an injury-in-fact); *Williams*, 737 F. Supp. 3d at 421 (same); *Cabezas*, 2025 WL 2053287, at *7 (same). Given the foregoing authority, the Court reaches several conclusions.

B. Plaintiffs Have Not Plausibly Alleged Standing to Support Their Claims for Monetary Relief

Plaintiffs assert they have suffered numerous injuries including, but not limited to:

> (i) theft of Private Information; (ii) damage to and diminution in the value of Private Information; (iii) costs associated with the detection and prevention of identity theft; (iv) damages arising from the inability to use accounts that may have been compromised during the Data Breach; (v) costs associated with time spent to address and mitigate the actual and future consequences of the Data Breach; (vi) imminent and impending injury resulting from potential fraud and identity theft posed

> because their Private Information is exposed for theft and sale on the dark web; (vii) loss of privacy; and (viii) anxiety due to the public dissemination of personal information.

*See* Amend. Compl. [3] at 23-28. According to the named Plaintiffs, "[u]pon information and belief," their "Private Information is now publicly available on the dark web because that is the *modus operandi* of cybercriminals who perpetrate data breaches of this nature," *id.* at 26, 28, and their Private Information's market value has been accordingly "damag[ed] and diminish[ed]," *id.* Plaintiffs also cite the time they have spent on mitigation activities in response to the breach and the anxiety, emotional distress, and humiliation it has caused them. *See id.* at 25-28, 40.

In the Court's view, these claims are insufficient to allege a concrete and particularized injury in fact because Plaintiffs have not pled adequate facts to plausibly claim any actual misuse of their Private Information. *See Okelola*, No. 2:26-cv-00002-HSO-BWR, Dkt. [19] at 16; *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 824 (5th Cir. 2022) ("[I]f a risk hasn't materialized, the plaintiff hasn't yet been injured."); *Green-Cooper*, 73 F.4th at 889 ("We typically require misuse of the data cybercriminals acquire from a data breach because such misuse constitutes both a 'present' injury and a 'substantial risk' of harm in the future."); *Tsao*, 986 F.3d at 1343-44 ("[W]ithout specific evidence of *some* misuse of class member's data, a named plaintiff's burden to plausibly plead factual allegations sufficient to show that the threatened harm of future identity theft was 'certainly impending'—or that there was a 'substantial risk' of such harm—will be difficult to meet.") (emphasis in original); *O'Leary*, 60 F.4th at 244 ("In *Beck v.*

*McDonald*, we held that plaintiffs whose personal information was compromised in a data breach hadn't shown an Article III injury based on an alleged 'increased risk of future identity theft and the cost of measures to protect against it.'" (quoting *Beck v. McDonald*, 848 F.3d 262, 267 (4th Cir. 2017))); *see also Williams*, 737 F. Supp. 3d at 421 ("[Particular Plaintiffs] also have not alleged an injury-in-fact because they have not alleged misuse or actual access of their private information.").

Plaintiffs' assertions they were forced to take extra measures to monitor and prevent identity theft are insufficient, because "if the hypothetical harm alleged is not 'certainly impending,' or if there is not a substantial risk of the harm, a plaintiff cannot conjure standing by inflicting some direct harm on [themselves] to mitigate a perceived risk." *Tsao*, 986 F.3d at 1339 (quoting and citing *Clapper*, 586 U.S. at 416). And so too for claimed harms referenced in the Amended Complaint [3] that "may," "could," or are "highly likely" to happen.[2] *See, e.g.*, Amend. Compl. [3] at 6 ("[T]he cybercriminals who stole this Private Information *could* freely monetize, misuse and/or disseminate that Private Information") (emphasis added); *id.* at 23 ("Plaintiffs and the Class are *highly likely* to experience identity theft and medical identity theft as a result of the Data Breach") (emphasis added); *id.* at 24 (Plaintiffs and Class Members injuries include "[d]amages arising from the inability to use accounts that *may* have been compromised during the Data Breach") (emphasis added). Such claims simply do not allege any concrete injury.

---

[2] In fact, a substantial portion of Plaintiffs' Amended Complaint [3] describes data breaches and their consequences, generally. Amend. Compl. [3] at 6-16. None of that provides a scintilla of support for standing for the specific Plaintiffs here.

Plaintiffs' assertions that they suffered "anxiety," *id.* at 25, 27, or "emotional distress" and "humiliation," *id.* at 40, are likewise insufficient, absent an instance of misuse or actual theft of their specific Private Information, *see Williams*, 737 F. Supp. 3d at 421-22 ("The Court further finds that these plaintiffs' claimed mitigation expenses, anxiety, sleeplessness, and other forms of emotional distress are insufficient to establish standing in the absence of allegations of misuse or actual theft of the data."). Nor are Plaintiffs' alleged injuries based on diminution in value of their Private Information well taken. There is no assertion that Plaintiffs paid a certain amount of money to SRHS in exchange for protection of their Private Information or that they intended to sell that information. *See, e.g.*, *Williams*, 737 F. Supp. 3d at 422 ("Finally, the named plaintiffs' claims of injury-in-fact based on lack of benefit-of-the-bargain and diminished value of private information are not well-taken. There is no allegation that any of the plaintiffs paid a certain amount of money to Bienville in exchange for protection of their private information or that they intend to sell their private information."); *Hemphill,* 2025 WL 837007, at *7 ("Hemphill and Chizek's speculation that their PII's value has diminished because it might have been stolen in the breach is not sufficiently concrete to satisfy the injury in fact requirement." (quotation omitted)).

Other of Plaintiffs' alleged injuries are, simply put, "too speculative to support standing," *Ellis*, 2024 WL 4692024, at *3, because they rely on subjective fears of the *possibility* that a nefarious actor will defraud them. For example, even if the Amended Complaint [3] adequately pled that some of their information was

published on the dark web, Plaintiffs' claims they were forced to spend time on mitigation activities is insufficient because they have not plausibly alleged that this was the result of Defendant's Data Breach, or that any actual fraudulent activity is certainly impending or at substantial risk of occurring due to that exposure. And "if the hypothetical harm alleged is not 'certainly impending,' or if there is not a substantial risk of the harm, a plaintiff cannot conjure standing by inflicting some direct harm on [himself] to mitigate a perceived risk." *Tsao*, 986 F.3d at 1339 (quoting and citing *Clapper*, 586 U.S. at 416). And "allegations of *possible* future injury" or theories of injury that rest "on a highly attenuated chain of possibilities" are not sufficient. *Clapper*, 568 U.S. at 409-10 (emphasis in original).

Nor does a claimed increase in spam calls, texts, or emails constitute an injury in fact. *See, e.g.*, *Cabezas*, 2025 WL 2053287, at *5; *Williams*, 737 F. Supp. 3d at 421 ("However, Fendley's allegation of an increase in spam phone calls is insufficient to establish an injury in fact."). And the Court agrees with those courts that have concluded that the mere exposure of Private Information, without more, does not constitute an injury in fact. *See, e.g.*, *O'Leary*, 60 F.4th at 244 ("[W]e've held that being subjected to a data breach isn't in and of itself sufficient to establish Article III standing without a nonspeculative, increased risk of identity theft.").

In addition, Plaintiffs have not plausibly alleged that their Private Information was in fact published on the dark web and that such publication is fairly traceable to Defendant's conduct. *See Okelola*, No. 2:26-cv-00002-HSO-BWR, Dkt. [19] at 19-21 (finding that allegations that publication of Private Information

to the dark web is the "*modus operandi*" of cybercriminals does not, in itself, establish traceability). As the party invoking federal jurisdiction, Plaintiffs bear the burden of clearly alleging facts demonstrating each element of standing. *See Spokeo, Inc.*, 578 U.S. at 338. Instead, the Amended Complaint [3] contains equivocal, or even seemingly factually contradictory, allegations on the subject of traceability. *See* Amend. Compl. [3]. For example, in one place, Plaintiffs posit that they and Class Members' injuries include "imminent and impending injury resulting from potential fraud and identity theft posed because *their Private Information is exposed* for theft and sale on the dark web." *Id.* at 24 (emphasis added). Yet, in another place, Plaintiffs merely "belie[ve]" their "Private Information is now publicly available on the dark web because that is the *modus operandi* of cybercriminals who perpetrate data breaches of this nature." *Id.* at 26, 28. The Amended Complaint's [3] conclusory leap that Plaintiffs' Private Information is on the dark web as a result of the Data Breach cannot be supported by such contradictory and inconsistent allegations.[3]

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [a court must] presume

[3] The Amended Complaint [3] also refers to a "sample" of data that the cybercriminals posted on the internet, which Plaintiffs allege contains "intimate and graphic images of patients and their surgeries/injuries, alongside general Private Information." Amend. Compl. [3] at 5; *see also id.* at 5 n.4. Plaintiffs, in response to the instant Motion [16] to Dismiss, even state "Plaintiffs' sensitive Private Information, including graphic images of intimate body parts, are in the hands of the [cybercriminal] ransomware group," Resp. [19] at 6, though Plaintiffs did not allege that in their Amended Complaint [3]. It appears to the Court that Plaintiffs fail to distinguish between the injuries of the named Plaintiffs, who have not actually alleged that their Private Information was included in the sample of Private Information posted online by the cybercriminals, and other potential victims of the Data Breach who are not named Plaintiffs. As stated, the Court need not resolve contradictory and inconsistent allegations in Plaintiffs' favor.

that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (quotation and alteration omitted). But here, unlike *Lujan*, Plaintiffs' own general allegations of injury are contradicted by others in their Amended Complaint [3]. *See, e.g.,* Amend. Compl. [3] at 24, 26, 28. Some courts have held that, "[w]here a plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." *In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 424 n.1 (S.D.N.Y. 2021), *aff'd sub nom. Tapinekis v. Pace Univ.*, No. 22-1058-CV, 2024 WL 2764146 (2d Cir. May 30, 2024) (quotation omitted); *see also, e.g., Sacco v. Mouseflow, Inc.*, No. 220CV02330TLNKJN, 2022 WL 4663361, at *2 (E.D. Cal. Sept. 30, 2022) (holding that while a court "must generally accept allegations in a complaint as true at the motion to dismiss stage, [it] need not accept inconsistent allegations in a complaint as true"). Faced with contradictory allegations when the plaintiff bears the burden of showing standing, another district court credited more specific allegations in the pleadings over "boilerplate" ones. *Doe v. Conceptions Reprod. Assocs., Inc.*, No. 25-cv-00009-NYW-CYC, 2026 WL 1145600, at *11 (D. Colo. Apr. 28, 2026).

Here, even under that latter, more favorable approach for Plaintiffs, *see id.*, the more specific allegations in the Amended Complaint [3] constitute mere speculation or conjecture that their Private Information may end up on the dark web based upon cybercriminals' general *modus operandi*, *see* Amend. Compl. [3] at 26, 28. But a "plaintiff cannot establish that an injury is 'fairly traceable' by

proposing a 'speculative chain of possibilities.'" *Williams*, 737 F. Supp. 3d at 422 (quoting *Clapper*, 568 U.S. at 414).

These allegations do not suffice to meet Plaintiffs' burden of demonstrating an injury-in-fact, *see Spokeo, Inc.*, 578 U.S. at 338, which is not a "mere pleading requirement[] but rather an indispensable part of [Plaintiffs'] case," *Lujan*, 504 U.S. at 561. Even if this were enough to show an injury, Plaintiffs have not plausibly alleged facts showing "a causal connection between the injury and the conduct complained of." *Book People*, 91 F.4th at 332 (quoting *Lujan*, 504 U.S. at 560). This is insufficient to confer standing. *See id.*

In *Okelola*, No. 2:26-cv-00002-HSO-BWR, Dkt. [19], this Court found that a plaintiff who alleged suspicious activity on his debit card following a data breach had not established a traceable injury because he failed to plausibly allege any facts that unauthorized charges on said card were traceable to the underlying data breach. *Okelola*, No. 2:26-cv-00002-HSO-BWR, Dkt. [19] at 21-23. Here, the named Plaintiffs have failed to even allege an injury as specific as the one described in *Okelola*, let alone *trace* a specific injury to the SRHS Data Breach. The deficiencies in Plaintiffs' allegations here are all the more clear. Because Plaintiffs have not alleged an Article III injury, they lack standing to pursue their claims.

C. <u>Plaintiffs have not Adequately Alleged Standing to Support Their Claim for Injunctive Relief</u>

The Court must separately address whether Plaintiffs have standing to seek injunctive relief. *See TransUnion*, 594 U.S. at 431 ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press

and for each form of relief that they seek (for example, injunctive relief and damages).”). Plaintiffs ask the Court to “grant permanent injunctive relief,” Amend. Compl. [3] at 41, to “strengthen [Defendant’s] data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class [M]embers [sic],” *id.* at 33, 35, 37, 40.

As the Fifth Circuit has explained:

> Requests for injunctive relief . . . implicate the intersection of the redressability and injury-in-fact requirements. . . . Because injunctive relief . . . cannot conceivably remedy any past wrong, plaintiffs seeking injunctive relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury. That continuing or threatened future injury, like all injuries supporting Article III standing, must be an injury in fact.

*Stringer v. Whitley*, 942 F.3d 715, 720-21 (5th Cir. 2019) (quotations omitted); *see also Book People*, 91 F.4th at 328-29 (“Plaintiffs seek injunctive relief, so they must show a continuing injury or threatened future injury, not a past one,” and that “[i]njuries . . . that require guesswork as to how independent decisionmakers will exercise their judgment will not suffice.” (quotations and citations omitted)). In particular, a plaintiff seeking injunctive relief must “show that it is likely, not merely speculative, that a favorable decision will redress the injury-in-fact” and “demonstrate either continuing harm or a real and immediate threat of repeated injury in the future.” *Gonzalez v. Blue Cross Blue Shield Ass’n*, 62 F.4th 891, 902 (5th Cir. 2023) (citation omitted). The pertinent inquiry is whether “the risk of

harm is sufficiently imminent and substantial." *TransUnion*, 594 U.S. at 435 (citing *Spokeo*, 578 U.S. at 341-42).

In this case, Plaintiffs lack standing to pursue injunctive relief because they have not alleged facts "tending to show that [another] data breach is currently impending or there is a substantial risk that one will occur." *Williams*, 737 F. Supp. 3d at 426 (quoting *Hummel v. Teijin Auto. Techs., Inc.*, No. 23-cv-10341, 2023 WL 6149058, at *14 (E.D. Mich. Sept. 20, 2023)); *see also Cabezas*, 2025 WL 2053287, at *8 ("While Plaintiffs have pled that Mr. Cooper retains their data and are able to identify security measures that could be improved, this claim for injunctive relief is based entirely on the speculative risk of [another] data breach."); *Beck*, 848 F.3d at 277-78 ("The most that can be reasonably inferred from the Plaintiffs' allegations regarding the likelihood of another data breach . . . is that the Plaintiffs *could* be victimized by a future data breach. That alone is not enough.") (emphasis in original). Because Plaintiffs have not plausibly alleged imminent risk of another data breach, their requests for injunctive relief should be dismissed for lack of standing.

## III. CONCLUSION

Because Plaintiffs have not plausibly alleged Article III standing, the Court is without subject-matter jurisdiction to adjudicate their claims, and they should be dismissed without prejudice. To the extent the Court has not specifically addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Singing River Health System's Motion [16] to Dismiss for Lack of Jurisdiction is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff Thierry Roussel's and Plaintiff Tina Alexander's claims, individually and on behalf of all others similarly situated, are **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction. The Court will enter a separate Final Judgment in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED**, this the 14th day of October, 2026.

s/ Halil Suleyman Ozerden
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE